**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**TERRE HAUTE DIVISION**

| | |
|---|---|
| RODERICK SCOTT REECE, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| vs. | ) CASE NO. 2:23-cv-328 |
| | ) |
| BELLE TIRE DISTRIBUTORS, INC., | ) |
| | ) |
| Defendant. | ) |

***PLAINTIFF'S COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF AND REQUEST FOR TRIAL BY JURY***

### I. INTRODUCTION

Plaintiff Roderick Scott Reece (hereinafter "Reece") is pursuing claims under the Americans With Disabilities Act against his former employer, Defendant Belle Tire Distributors, Inc. (hereinafter "Belle Tire") to remedy his wrongful and discriminatory termination of employment which occurred on or about March 25, 2023.

### II. FACTUAL ALLEGATIONS

1.  Reece is a resident of Terre Haute, Vigo County, Indiana.

2.  Belle Tire Distributors, Inc. ("Belle Tire") is a large regional tire retailer and service provider. Belle Tire's headquarters is in Allen Park, Michigan.

3.  Reece worked for Belle Tire at its retail location in Terre Haute, Vigo County, Indiana. He was hired to serve as Second Assistant Manager in approximately June 2021.

4.  Reece always did good work for Belle Tire and met all of the company's reasonable expectations. Reece has a long career in automobile service and repair and was actually recruited by Belle Tire for this position from a local automobile dealer's service center.

5.     As explained in more detail below, Belle Tire told Reece by email that his employment was "administratively terminated" effective March 25, 2023 because Belle Tire "could not accommodate" medical restrictions related to Reece's disability. This statement is untrue. Moreover, this statement and others are clear indications that Belle Tire terminated Mr. Reece's employment in violation of the Americans with Disabilities Act ("ADA").

6.     In approximately November 2022, Reece was diagnosed with vasculitis. Vasculitis is described as an inflammation of the blood vessels. Vasculitis occurs when the body's immune system attacks the blood vessel by mistake. It can cut off vital blood supply to tissues and organs, causing many disabling symptoms. In Reece's case, vasculitis has caused Stage 4 chronic kidney disease, which will require him to undergo dialysis on a 3 time per week basis. Vasculitis causes fatigue and severe muscle and joint pain. In Reece's case, vasculitis has caused him significant limitations in his ability to walk and, at times, to see.

7.     Close in time to Thanksgiving 2022, Reece was hospitalized because of his vasculitis. Shortly thereafter, he underwent chemotherapy treatment for his vasculitis. During this time, Reece kept his managers at Belle Tire informed of his medical condition, hospitalization and treatment. Reece was placed on medical leave.

8.     At least by late December 2022, Reece was asking Belle Management what he had to do to be permitted to return to work. Reece discussed his medical restrictions and need for any accommodation. Reece offered to begin by returning to work part time. Belle Tire did nothing to accommodate Reece's disability or to make any arrangements for his return to employment in the following months.

9.     Instead, on March 21, 2023, Rebecca Kovalcheck, who identified herself as a Worker Compensation and Leave Specialist for Belle Tire, sent Reece an email telling him that

Belle Tire would not be able to accommodate his disability and that his employment would be administratively terminated on March 25, 2023. She went on to tell Reece that his benefits would terminate that same day. This includes Reece's company health insurance, which has been and will be very important to Reece's continuing treatment.

10. Reece can perform all essential functions of his Second Assistant Manager job. Even before his diagnosis, Reece's manager job was an office job and did not require Reece to perform any physical labor (e.g., tire changes, automobile service, driving) or even require Reece to enter the actual service shop. Reece worked at a desk with a computer. His office had a customer service counter where Reece would meet and consult with Belle Tire customers. Reece would assist customers and schedule services for customers with the mechanics and technicians. The only primary reasonable accommodations Reece needs to perform his office job are 1) walking with use of a cane; 2) a chair or stool to enable him to sit while working occasionally; and 3) potentially a modified work schedule that works with his regular dialysis and medical appointments.

11. Reece provides his own cane. Reece already has a chair at the Belle Tire store. The only effort Belle Tire had to make to accommodate Reece was to modify his schedule to enable Reece to work 40 hours or more per week while still attending his scheduled dialysis and medical appointments.

12. Belle Tire indicated through Ms. Kovalcheck's email that the company mistakenly believed Reece could only work 35 hours per week (less than 40 hours). This is not true. Reece simply needs to work hours that do not conflict with his dialysis and medical appointments. Belle Tire has hours of operation that would easily permit the company to continue Reece's full time employment, with work of 40 or more hours of week, while still accommodating Reece's

schedule and attendance at dialysis and medical appointments.

13. Belle Tire's hour of operation at its Terre Haute store are:

| | |
|---|---|
| Monday: | 8 am - 8 pm |
| Tuesday: | 8 am - 6 pm |
| Wednesday: | 8 am - 6 pm |
| Thursday: | 8 am - 8 pm |
| Friday: | 8 am - 6 pm |
| Saturday: | 8 am - 5 pm |

The store is open 6 days per week for at least 63 hours. The store is open more than enough hours that Reece could schedule his dialysis and medical appointments such that he still worked 40 or more hours every week.

14. The facts are plain that Reece remains a qualified individual with disabilities - vasculitis and Stage 4 chronic kidney disease - who can fully perform all essential functions of his job with or without reasonable accommodations. To any extent that Belle Tire claims that Reece's disabilities make it dangerous or physically too difficult to perform tire changes, automobile repair or even to walk around the service area, Reece's job did not and does not require any of these things. Reece doesn't perform any physical labor and often went many days without setting foot in the actual service area. Again, Reece worked in a separate office.

15. Reece's claims arise under the Americans with Disabilities Act (ADA). Certainly, Reece's vasculitis and Stage 4 chronic kidney disease constitute covered disabilities under the ADA, particularly as Reece's injuries substantially limit him in multiple major life activities including lifting, walking and performance of manual functions. Moreover, Reece's disabilities severely limit Reece's vasular and kidney systems.

16. Reece went so far as to obtain his physician's written release to work and provided that release to Belle Tire. Reece was release to work by March 24, 2023 and the physician listed Reece's vasculitis and medical restrictions for Belle Tire.

17. At the least, Belle Tire has committed the following ADA violations against Reece:

   a. Liability for its failure to properly engage Reece in the ADA required interactive communication process to determine how Reece could continue in Belle Tire's employment with reasonable accommodations;

   b. Failure to modify Reece's work schedule to accommodate his medical treatment;

   c. Failure to consider Reece's request that it, at the least, allow him to return to work part time. Further, this refusal to consider alternatives resulted in ADA violations including failure to transfer Reece to vacant positions for which he was qualified;

   d. Telling Reece in writing that Belle Tire may reconsider its decision to terminate his employment by telling Reece:

   "This does mean that as you won't be able to return to work without restrictions or with approved restrictions that we can accommodate, by 3/25/23, we will have to move forward with administratively terminating you on that date due to having exhausted all leaves. You will absolutely be able to reapply in the future if your restrictions are lifted."

   Return to work with "no restrictions" of when "100% healed" policies and practices are per se violations of the ADA, particularly as such policies are created to evade ADA duties to interactively communicate and to reasonably accommodate qualified individuals with disabilities.

   e. The actual termination of Reece's employment because of his disability and need for accommodations.

   f. The actual termination of Reece's employment because of the record of Reece's disability possessed by Belle Tire.

18. To provide additional information and ideas, Reece would share the following about the ADA:

   **Americans with Disabilities Act**.

1. Interactive Communication Process.

    The interactive process imposes "a duty on employers to engage in a flexible give-and-take with the disabled employee so that together they can determine what accommodation would enable the employee to continue working." *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 805 (7th Cir. 2005) (citing 29 C.F.R. § 1630.2(o)(3)); *Smith v. Dep't of Human Servs.*, 2020 WL 887486, at *9 (N.D. Ill. Feb. 24, 2020).

    This failure to communicate or help Reece at all was particularly important in this case. To invoke the interactive process, an employee simply needs to say " 'I want to keep working for you—do you have any suggestions?' " *Miller v. Ill. Dep't of Corr.*, 107 F.3d 483, 487 (7th Cir.1997). At that point, "the employer has a duty under the Act to ascertain whether he has some job that the employee might be able to fill." *Id.*

    Reece repeatedly let Belle Tire management know that he wanted to keep working for Bell Tire.

2. Failure to Transfer to a Vacant Position, Even if the Vacant Position Constitutes a Demotion.

    Under the ADA, Reece was eligible for transfer to a vacant Belle Tire job, even if that job constituted a demotion.

    It is true that "the ADA may require an employer to reassign a disabled employee to a different position as reasonable accommodation where the employee can no longer perform the essential functions of their current position." *Gile v. United Airlines, Inc.*, 95 F.3d 492, 498 (7th Cir.1996). However, "there are significant limitations on an employer's potential obligation to reassign a disabled employee as reasonable accommodation." *Id.* at 499. "An employer may be obligated to reassign a disabled employee, but only to vacant positions; an employer is not required to 'bump' other employees to create a vacancy so as to be able to reassign the disabled employee. Nor is an employer obligated to create a 'new' position for the disabled employee." Id. (citation omitted); see *Ozlowski*, 237 F.3d at 841 n. 2 ("[A]n employer is not required to bump a current employee in order to provide reasonable accommodation."). Although the ADA requires an employer to consider reassigning a disabled employee to a job that would represent a demotion, see *Dalton v. Subaru–Isuzu Auto., Inc.*, 141 F.3d 667, 678 (7th Cir.1998), the employer's reassignment obligation is nonetheless limited to vacant positions. See *id.* at 677; see also *Gratzl*, 601 F.3d at 680 n. 4; Gile, 95 F.3d at 499. See *Stern v. St. Anthony's Health Ctr.*, 788 F.3d 276, 291 (7th Cir. 2015).

    Here, Bell Tire is opening a second Terre Haute, Indiana store in the near future. Even if the job may be a demotion or part time, Reece let Bell Tire know that he

wanted to return to work and that he would even return on a part time basis if need be.

3. <u>Failure to Reasonably Accommodate</u>.

The ADA regulation itself on "reasonable accommodation" illustrates the many ways in which Belle Tire violated Reece's ADA rights and protections:

29 C.F.R. § 1630.2 states:

o) Reasonable accommodation.

(1) The term reasonable accommodation means:

> (i) Modifications or adjustments to a job application process that enable a qualified applicant with a disability to be considered for the position such qualified applicant desires; or

> (ii) Modifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position; or

> (iii) Modifications or adjustments that enable a covered entity's employee with a disability to enjoy equal benefits and privileges of employment as are enjoyed by its other similarly situated employees without disabilities.

(2) Reasonable accommodation may include but is not limited to:

> (i) Making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and

> (ii) Job restructuring; part-time or modified work schedules; reassignment to a vacant position; acquisition or modifications of equipment or devices; appropriate adjustment or modifications of examinations, training materials, or policies; the provision of qualified readers or interpreters; and other similar accommodations for individuals with disabilities.

(3) To determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the individual with a disability in need of the accommodation. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.

> (4) A covered entity is required, absent undue hardship, to provide a reasonable accommodation to an otherwise qualified individual who meets the definition of disability under the "actual disability" prong (paragraph (g)(1)(i) of this section), or "record of" prong (paragraph (g)(1)(ii) of this section), but is not required to provide a reasonable accommodation to an individual who meets the definition of disability solely under the "regarded as" prong (paragraph (g)(1)(iii) of this section).

29 C.F.R. § 1630.2 (emphasis added).

4. <u>Medical Leave as a Reasonable Accommodation</u>

The Seventh Circuit has long interpreted the ADA's reasonable accommodation requirement as including paid or unpaid leave, subject to an employer's demonstration of undue hardship. *See, e.g.*, *Haschmann v. Time Warner Entm't Co.*, 151 F.3d 591, 601 (7th Cir. 1998) (stating that there was sufficient evidence from which a reasonable juror could conclude that the second medical leave of 2-4 weeks, as requested—following an earlier leave of three weeks and a modified schedule for three weeks—would have been a reasonable accommodation and was a question of fact for the jury). Other courts have rejected the per se rule that an extended medical leave can never be a reasonable accommodation under the ADA. *See, e.g*, *Garcia-Ayala v. Lederle Parenterals, Inc.*, 212 F.3d 638, 647-48 (1st Cir. 2000) (rejecting a per se rule that extended leaves cannot be reasonable accommodations and citing other cases that have held that a medical leave of absence is a reasonable accommodation under the Act in some circumstances).

19. Reece has been significantly harmed by Belle Tire's discriminatory termination of his employment. He is seeking reinstatement, all lost wages and benefits, front pay and benefits if he is not reinstated, and all compensatory and punitive damages, including compensatory damages for mental and emotional stress and anguish, humiliation, loss of enjoyment of life, career damage, and all pecuniary damages. Reece is also seeking payment of all of his reasonable attorney's fees, costs and expenses.

### III. JURISDICTION AND VENUE

20. This Court has jurisdiction over Reece's Americans With Disabilities Act claim as that claim raises a question of federal law. See 28 USC § 1331 and 42 USC § 12101 et seq.

21. Venue is proper in this Court pursuant to 28 USC § 1391 because the unlawful

conduct alleged herein was and is now being committed in Vigo County, Indiana.

## IV.  ADMINISTRATIVE PROCEDURES

22. Reece has complied with all of the administrative procedures that are conditions precedent to the filing of this lawsuit. With respect to his claim under the Americans with Disabilities Act, Reece received his Notice of Right to Sue from the Equal Employment Opportunity Commission, which was dated June 27, 2023.

## V.  STATEMENT OF CLAIMS

### CLAIMS UNDER THE AMERICANS WITH DISABILITIES ACT

23. Reece incorporates herein by reference paragraphs 1 through 22 above.

24. Belle Tire knowingly and intentionally discriminated against Reece in violation of the Americans with Disabilities Act and the Americans with Disabilities Act Amendments Act of 2008 ("ADA").

25. Belle Tire's violations of Reece's ADA rights included, but are not limited to, the following:

    a. Liability for its failure to properly engage Reece in the ADA required interactive communication process to determine how Reece could continue in Belle Tire's employment with reasonable accommodations;

    b. Failure to modify Reece's work schedule to accommodate his medical treatment;

    c. Failure to consider Reece's request that it, at the least, allow him to return to work part time. Further, this refusal to consider alternatives resulted in ADA violations including failure to transfer Reece to vacant positions for which he was qualified;

    d. Telling Reece in writing that Belle Tire may reconsider its decision to terminate his employment by telling Reece:

"This does mean that as you won't be able to return to work without restrictions or with approved restrictions that we can accommodate, by 3/25/23, we will have to move forward with administratively terminating you on that date due to having exhausted all leaves. You will absolutely be able to reapply in the future if your restrictions are lifted."

Return to work with "no restrictions" of when "100% healed" policies and practices are per se violations of the ADA, particularly as such policies are created to evade ADA duties to interactively communicate and to reasonably accommodate qualified individuals with disabilities.

e. The actual termination of Reece's employment because of his disability and need for accommodations.

f. The actual termination of Reece's employment because of the record of Reece's disability possessed by Belle Tire.

26. Reece is a qualified individual with a disability who is capable of performing all essential functions of his job with Belle Tire, with or without reasonable accommodation. Reece's vasculitis and Stage 4 liver failure are disabilities under the ADA, and both substantially impair and significantly restrict Reece, when compared to the average person in the general population, in a number of major life activities, including, but not limited to, blood functions, blood cleansing and other bodily functions.

27. Additionally, Belle Tire terminated Reece and discriminated against Reece based upon Belle Tire's regard of Reece as being disabled with vasculitis and Stage 4 kidney failure.

28. Belle Tire terminated Reece rather than engage with him in the interactive communication process required under the ADA.

29. Belle Tire discriminated against and terminated Reece for having engaged in protected activity, to wit, making known his disability, and his need for reasonable accommodations.

30. Prior to his termination from employment, Reece performed his job duties well and met his employer's reasonable expectations.

31. Reece's disability improperly motivated Belle Tire's decision to discharge him from employment. Such wrongful actions on the part of Belle TireWalmart violate Title I of the Americans With Disabilities Act, 42 U.S.C. § 12101 et seq, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981a and the Americans With Disabilities Amendments Act of 2008.

32. Belle Tire failed and refused to make reasonable accommodations to Reece's known and/or perceived physical limitations, in violation of Title I of the Americans With Disabilities Act, 42 U.S.C. § 12112(b)(5)(A). The effect of Belle Tire's conduct has been to deprive Reece of equal employment opportunities and to deprive him of the same rights as are enjoyed by other citizens.

33. As a direct and proximate result of Belle Tire's conduct, Reece has sustained substantial economic losses, including past and future wage losses, and other economic benefits. Reece has also sustained the loss of financial stability, peace of mind and future security, and has suffered embarrassment, humiliation, career damage, mental and emotional distress, discomfort, and loss of enjoyment of life, all to his detriment and damage in amounts not fully ascertained. Further, as described hereinabove, Belle Tire acted oppressively, maliciously, fraudulently and outrageously toward Reece, with conscious disregard for Reece's known rights and with the intention of causing unjust and cruel hardship to Reece. In acting in a deliberate and intentional manner, Belle Tire intended to and did injure and annoy Reece. Reece is seeking punitive damages against Belle Tire for its violations of the ADA.

34. As a result of Belle Tire's discriminatory practices, Reece is seeking all available compensatory damages, punitive damages, and any and all equitable relief available to him under

the ADA.

35. As a result of Belle Tire's discriminatory practices, Reece has found it necessary to retain the services of an attorney and is therefore entitled to his reasonable attorney's fees in this matter.

## VI.  PRAYER FOR RELIEF

WHEREFORE, Roderick Scott Reece respectfully requests that the Court enter judgment against Belle Tire and issue all available relief to him, including, but not limited to, the following:

1. All damages available under the ADA;

2. All compensatory damages;

3. All punitive damages;

4. Any and all available equitable relief;

5. All back pay and benefits;

6. Reinstatement and/or front pay and benefits;

7. All reasonable attorney's fees and expenses;

8. Costs;

9. Prejudgment interest, if available; and

10. Any and all other relief just and proper in the premises.

Respectfully submitted,

HASSLER KONDRAS MILLER LLP

By/s/Robert P. Kondras, Jr.
Robert P. Kondras, Jr.
Attorney No. 18038-84
100 Cherry Street
Terre Haute, IN 47807

                            (812) 232-9691
                            Facsimile: (812) 234-2881
                            kondras@hkmlawfirm.com

## *REQUEST FOR TRIAL BY JURY*

Comes now Plaintiff Roderick Scott Reece, by his counsel, and hereby requests a trial by jury on issues which may be tried to a jury.

                            Respectfully submitted,

                            HASSLER KONDRAS MILLER LLP

                            By/s/Robert P. Kondras, Jr.
                            Robert P. Kondras, Jr.